# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| DAPO ADEYEYE, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | No. 00 CR 233 |
| ) | |
| UNITED STATES OF AMERICA, ) | Wayne R. Andersen |
| ) | District Judge |
| Respondent. ) | |
| ) | |

## MEMORANDUM OPINION AND ORDER

This case is before the court on the petition of defendant Dapo Emmanuel Adeyeye ("Adeyeye") to vacate his conviction pursuant to a writ of coram nobis. Adeyeye alleges that his attorney in the above-captioned case, Andrea E. Gambino, did not inform him that entering a plea of guilty could affect his immigration status, and that such an omission constitutes ineffective assistance of counsel in violation of the Fifth and Sixth Amendments of the United States Constitution. Adeyeye relies on the All Writs Act, 28 U.S.C. §1651, in his petition for a writ of coram nobis. For the reasons set forth below, the court denies Adeyeye's petition.

## BACKGROUND

In 1991, Adeyeye emmigrated to the United States from Nigeria to live with his sister in New York. In 1996, Adeyeye became a permanent legal resident of the United States. On March 29, 2000, United States Customs' agents (now known as United States Immigration and Customs Enforcement)("ICE") received an anonymous tip that a Nigerian national named Melvin Reynolds was flying into O'Hare International Airport from the United Kingdom and that Reynolds would be staying at the Heart of Chicago Hotel during his stay in Chicago. The

agents knew that the Heart of Chicago Hotel was a notorious location for narcotics trafficking and believed that Reynolds would be carrying narcotics.

The agents called the Heart of Chicago Hotel to see if Reynolds had checked in, which he had not. The agents then asked if any Nigerian nationals had checked into the hotel and the hotel employee informed them that a Nigerian national by the name of Dapo Adeyeye had checked in earlier that day. Believing that Reynolds had checked in under the alias of Dapo Adeyeye, the agents went to the hotel to see if Adeyeye was actually the individual known as Melvin Reynolds. Upon arriving at the hotel, the agents went to the room where Adeyeye was staying and identified themselves as police officers. Adeyeye opened the door and identified himself. He did not produce any form of identification. Adeyeye then gave the agents permission to search the hotel room. During the search, the agents found 1.06 kilograms of heroin in a suitcase on the bed.

After losing a contentious suppression hearing regarding the search of the hotel room, Adeyeye pled guilty to possessing heroin with intent to distribute. On October 17, 2002, this court sentenced him to the statutory minimum of 120 months of incarceration. Adeyeye appealed the sentence and the Seventh Circuit affirmed the decision of this court on February 20, 2004. *United States v. Adeyeye*, 359 F.3d 457 (7th Cir. 2004). A year later, Adeyeye filed a habeas corpus petition pursuant to 28 U.S.C. § 2255. In that petition, Adeyeye alleged that the sentencing procedures in his case were conducted incorrectly, that his counsel, Ms. Gambino, was ineffective because she failed to ask for various downward departures during the sentencing phase, and that the government failed to adhere to its agreements for certain downward departures. *Adeyeye v. United States*, No. 05 C 1087, 2006 U.S. Dist LEXIS 10503 (N.D. Ill.

Mar. 20, 2006). We denied Adeyeye's habeas petition on March 20, 2006. *Id.*

On December 16, 2008, the Bureau of Prisons remanded Adeyeye into ICE custody. Adeyeye is currently detained in ICE custody while awaiting a deportation hearing. In an attempt to avoid deportation, Adeyeye filed the instant petition for a writ of coram nobis, which seeks to vacate his 2002 conviction. Adeyeye asserts two grounds as to why his conviction should be vacated: 1) his attorney, Ms. Gambino, failed to provide him with effective assistance of counsel because she did not advise him that pleading guilty could affect his immigration status, and 2) the court did not advise him at sentencing that his plea of guilty could affect his immigration status. Therefore, Adeyeye alleges that he entered into his guilty plea without knowledge that the conviction might lead to his deportation. (Pet.'s Mot. to Vacate at 8.)

## **LEGAL STANDARD**

A petition for a writ of coram nobis is a remedy available at common law, preserved by the All Writs Act, 28 U.S.C. § 1651, which is intended to correct fundamental errors of fact. *United States v. Addonizio*, 442 U.S. 178, 186, 99 S. Ct. 2235, 60 L. Ed. 2d 805 (1979). However, the All Writs Act is only a residual source of authority. Thus, when "a statute specifically addresses the particular issue at hand, it is that authority, and not the All Writs Act, that is controlling." *Carlisle v. United States*, 517 U.S. 416, 116 S. Ct. 1460, 134 L. Ed. 2d 613 (1996). The writ of coram nobis is intended to be "limited to defects that sap the proceeding of any validity." *United States v. Doe*, 867 F.2d 986, 988 (7th Cir. 1989) (citing *United States v. Keane*, 852 F.2d 199, 203 (7th Cir. 1988)). The writ of coram nobis cannot be used to reach issues that could have been raised on direct appeal. *Barnickel v. United States*, 113 F.3d 704, 706 (7th Cir. 1997). Moreover, as the court explained in *Keane*, the remedy of coram nobis is

3

restricted because, "the reason to bend the usual rules of finality is missing when liberty is not at stake. Courts must conserve their scarce time to resolve the claims of those who have yet to receive their first decision." *Keane*, 852 F.2d at 203.

To justify granting the writ of coram nobis, Adeyeye must show that (1) the claim could not have been raised on direct appeal, (2) the conviction resulted in "lingering civil disabilities," and (3) the error is such that it "would have justified habeas corpus relief pursuant to 28 U.S.C. § 2255." *Doe*, 867 F.2d at 988. Consequently, as a threshold matter, Adeyeye must demonstrate that he could not have raised his claims in the habeas corpus petition he filed pursuant to Section 2255. If Adeyeye is able to demonstrate that he surpasses this threshold question, thus giving this court jurisdiction over his petition, he must then show that his claims meet the above three-prong standard articulated by the Seventh Circuit in *Doe* in order to be entitled to relief. *Doe*, 867 F.2d at 988.

## DISCUSSION

Adeyeye filed the instant petition for a writ of coram nobis, claiming that his 2002 conviction should be vacated on the grounds that his attorney did not inform him of the possibility of deportation back to Nigeria as a result of his guilty plea. We deny Adeyeye's petition for three reasons: 1) Adeyeye is still "in custody" for purposes of collateral attack and, therefore, this court lacks jurisdiction over this petition; 2) even if we did have jurisdiction over this matter, the record is replete with evidence demonstrating that he was aware of the possibility of deportation throughout the proceedings in his criminal case; 3) even if he was not aware of the possibility of deportation, there are many collateral consequences to pleading guilty, and failure to be advised about one of those consequences does not constitute ineffective assistance of

4

counsel such that Adeyeye is entitled to have his conviction vacated.

I.  **Because Adeyeye Remains on Supervised Release, this Court Lacks Jurisdiction Over the Petition**

Adeyeye argues that, because he is no longer in the custody of the Bureau of Prisons, he is precluded from bringing his current claims under 28 U.S.C. § 2255, which requires a petitioner to be in custody for the court to have jurisdiction over the petition. (Pet.'s Mot. to Vacate at 6); *see also United States v. Sloan*, 505 F.3d 685, 697 (7th Cir. 2007). Therefore, Adeyeye asserts that because he is no longer in custody, his only form of relief is through the residual authority of the All Writs Act, 28 U.S.C. § 1651. (Pet.'s Mot. to Vacate at 6.) However, Adeyeye's argument is meritless for two reasons: 1) he already filed a petition for habeas corpus while in prison; and 2) he is currently on supervised release, which qualifies as "custody" for purposes of a collateral attack.

First, Adeyeye was sentenced in 2002 and has been in custody since his arrest in 2000. As described above, Adeyeye already filed a habeas corpus petition while in prison and failed to raise any of the current claims of error in that habeas petition. Second, Adeyeye is currently on supervised release and will be for the next five years (unless he is deported). (Pet.'s Mot. to Vacate at 6.) For the purposes of a collateral attack on the proceedings, the Supreme Court and the Seventh Circuit have held that supervised release is a form of custody. *See Virsnieks v. Smith*, 521 F.3d 707, 717 (7th Cir. 2008) (citing *Jones v. Cunningham*, 371 U.S. 236, 242-43 (1963)). Therefore, because Adeyeye is still "in custody" as the Seventh Circuit and the Supreme Court have defined that term, the residual authority contained in the All Writs Act does not give this court jurisdiction to grant coram nobis relief.

5

## II. Adeyeye's Claim Could Have Been Raised in his Petition for Habeas Corpus

Adeyeye also asserts that he could not have raised his current claim for ineffective assistance of counsel in his 2005 habeas corpus petition. (Pet.'s Mot. to Vacate at 5.) He argues that his attorney did not inform him that his plea of guilty could be used against him in a deportation proceeding and that he only realized that it could be used against him when he was remanded to ICE custody in December 2008. (*Id.*) However, Adeyeye claims that he received ineffective assistance of counsel in violation of his constitutional rights in **2002**. Therefore, any error based on that alleged ineffective assistance was present in 2005 when Adeyeye filed his petition for habeas corpus. The fact that Adeyeye is now facing deportation does not retroactively create a new error that forms the basis for coram nobis relief.

The record is replete with evidence demonstrating that Adeyeye knew about the possibility of deportation throughout the proceedings. In fact, the record indicates that Adeyeye was aware that his guilty plea could be the basis for deportation as early as his preliminary hearing. For example, when discussing whether Adeyeye should be released on bond at that hearing, Ms. Gambino stated that Adeyeye had no incentive to flee the jurisdiction before the start of his trial. (Prelim. Hearing Tr. Apr. 3, 2000 at 31.) Ms. Gambino continued on to state that if Adeyeye, "were to flee, or if he were to lose, he would be in danger of losing his residency and be deported back to Nigeria where he clearly does not want to be." (*Id.*)

Additionally, the record demonstrates that Adeyeye was on notice that he could be deported based on several other statements. First, the Presentence Investigation Report ("PSI"), which, when questioned by the court, Adeyeye admitted to having read and discussed with his lawyer, (Sentencing Tr. Sept. 12, 2002), mentions the possibility of deportation in three separate

places. The report states, "[t]his officer does not consider this defendant to be a good candidate for community service due to the nature of the crime and defendant's possible deportation." (PSI at 13.) Additionally, when relaying Adeyeye's restrictions while on supervised release, the report states, "[i]f the defendant is not deported and while on supervised realease, the defendant shall not commit another federal, state or local crime..." (*Id.* at 14.) Finally, the report also states, "[i]f the defendant is deported, he shall remain outside of the United States unless permission has been granted by the United States Attorney General's Office. (*Id.*)

At the portion of the sentencing hearing held on October 18, 2002, the possibility of deportation was also mentioned. First, in arguing that the court should downward depart from the Sentencing Guidelines' range, Ms. Gambino stated,

> And also I would ask the Court to consider a further departure for him. There are several basis for that. Most of them fall under the category of a Farouil [sic] departure because of the additional hardships that he will face, that other people in his situation won't face because it is not every person of foreign extraction that comes before you that actually has citizen family members or that has worked to establish permanent residency in the way that Mr. Dapo Adeyeye has. ***And he is going to lose that very valuable – that very valuable residency and opportunity for staying here and becoming a citizen because of this mistake that he has made***.
>
> And that is a very, very serious punishment from his point of view because his opportunities for earning a living and supporting his family are greater here than they were in Nigeria. That is what brought him here in the first place. ***And because of this mistake he will not be able to pursue any of those in the future.***
>
> In addition, with respect to people who come from Nigeria, they do face the possibility of – of greater punishment when they return. People who are convicted of felony offense outside the country sometimes are also subjected to prosecution in Nigeria. ***So that is an additional problem that he will face*** that people from other countries may not face, that other aliens will not face.
>
> In addition to the ordinary – as – problems that aliens face in prison here, which Mr. Porter has pointed out, are not in and of themselves sufficient anymore under the law to give a departure but which work a particular hardship on individuals who have family members who are going to be deprived of their ability – who are basically going to be

7

forced to choose between exercising their citizenship rights or being with their father. ***Because his children, even though they had a right to be here, won't be able to stay here and be with their father at the same time.***

(Sentencing Tr. Oct. 18, 2002 at 22-23)(emphasis added). Second, when reading the judgment, the court also listed the same possibilities as to deportation as those listed in the PSI. (*Id.* at 27-28.) Finally, the judgment and commitment order entered in this case also lists the same possibilities as to deportation as those listed in the PSI and read to Adeyeye at the sentencing hearing. (00 CR 233, Dkt. # 77.)

Therefore, Adeyeye was, or should have been, aware that his guilty plea could be a basis for deportation as early as the preliminary hearing and was reminded of this fact several times throughout the course of the proceedings in this case. Accordingly, he had the opportunity to raise this ineffective assistance of counsel claim in his petition for habeas corpus, but failed to do so. Thus, by failing to raise this issue in his habeas petition, he has waived this claim and cannot now raise it. *See United States v. Correa-De Jesus*, 708 F.2d 1283, 1286 (7th Cir. 1983) (holding that the court should not award relief under a writ of coram nobis when petitioner had earlier opportunities to pursue relief and stating, "[l]aches is a bar to the bringing of a motion for a writ of coram nobis").

Furthermore, although Adeyeye alleged *a* claim for ineffective assistance of counsel in his habeas corpus petition, that petition alleged that his counsel committed different errors than those raised here. Accordingly, his habeas claim for ineffective assistance of counsel is distinct from the claim at issue here and does not change our analysis.

Therefore, even if we had jurisdiction over this matter, Adeyeye would not be entitled to relief because he could have raised this claim for ineffective assistance of counsel in his habeas petition.

8

**III.     Adeyeye's Claim Does Not Constitute Ineffective Assistance of Counsel**

Finally, even if Adeyeye could not have raised this claim for ineffective assistance of counsel in his habeas corpus petition, as he claims, Adeyeye would still not be entitled to a writ of coram nobis because we find that Ms. Gambino's alleged failure to inform Adeyeye about the possibility of deportation does not constitute ineffective assistance of counsel.

Ineffective assistance of counsel claims are examined under the two-pronged test established by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). This general test focuses on "the legal profession's maintenance of standards" rather than a critique of counsel's performance. *Id.* at 688. The petitioner must meet both prongs of the *Strickland* test or the claim fails. *Id.* at 687.

The first prong, the performance prong, examines whether counsel's defense meets the standard of "reasonably effective assistance." *Id.* To satisfy this prong, the petitioner must affirmatively demonstrate that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. In making this determination, the court is to give a high level of deference to counsel because it is all too easy in hindsight, after the petitioner has lost his case, to find that counsel's lack of success fell below the level of representation required by counsel to provide. *Id.* at 689. The petitioner must provide clear evidence, in the form of specific acts or omissions, to overcome this presumption. *Id.* at 689-90. The court must view the facts that the petitioner presents from the perspective of counsel at the time of the conduct alleged to be inadequate. *Id.* at 689.

The second prong, the prejudice prong, examines whether counsel's act or omission had an adverse effect on the defense. *Id.* at 692. This prong protects against the situation where counsel may have acted unreasonably but the unreasonable act or omission did not prejudice the

9

petitioner's defense. *Id.* at 691-92. To satisfy this prong, the petitioner must affirmatively demonstrate the prejudice that resulted, and must further demonstrate that there is a "reasonable probability" that his attorney's acts or omissions affected the outcome. *Id.* at 693-94. The court should make this determination in light of the totality of the evidence. *Id.* at 695.

Ms. Gambino's alleged failure to inform Adeyeye about the possibility of deportation does not satisfy either prong of the *Strickland* test. First, there are many collateral consequences to entering a guilty plea that results in a felony conviction, and it is not unreasonable for an attorney not to inform her client of **all** of those consequences. A defendant who has pled guilty cannot attempt to, in effect, back out of a guilty plea simply because one of those adverse collateral consequences becomes known to him at a later date. Second, this alleged omission did not prejudice the defendant because Adeyeye has not demonstrated (nor could he) that the knowledge of this deportation possibility had any effect on his guilt or innocence. Therefore, there is no reason for this court to believe that if Adeyeye had known about the possibility of deportation, the outcome would have been different. Accordingly, even if Ms. Gambino did, in fact, fail to inform Adeyeye about the possibility of deportation (an allegation directly contradicted by the evidence in the record), we find that this does not rise to level of ineffective assistance of counsel so as to entitle Adeyeye to have his conviction vacated pursuant to a writ of coram nobis.

## **CONCLUSION**

For the foregoing reasons, Adeyeye's motion [89] to vacate his conviction pursuant to a writ of coram nobis is denied. This is a final and appealable order.

It is so ordered.

_____
Wayne R. Andersen
United States District Court

Dated: October 1, 2009_____